## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

STEVEN FERGUSON,
         - Plaintiff


v.                                    CIVIL NO. 3:09-CV-1028 (CFD)


TD BANK, N.A.,
         - Defendant


### Ruling and Order on Plaintiff's Motion to Compel

On May 20, 2010, the plaintiff, Steven Ferguson ("Ferguson"), filed a motion to compel the defendant, TD Bank ("the Bank"), to fully and completely respond to his two sets of interrogatories and requests for production dated November 11, 2009, and March 1, 2010. (Pl.'s Mot. Compel 1.)  For the reasons set forth below, Ferguson's motion to compel is **GRANTED.**

## I.   Introduction

On November 11, 2009, Ferguson served his first set of interrogatories and production requests on the Bank.  (Pl.'s Mem. Supp. 1.)  On January 14, 2010, the Bank submitted its first set of responses thereto.  Id.  On February 24, 2010, Ferguson and the Bank conferred via telephone in an attempt to resolve the Bank's objections to Ferguson's first set of discovery requests.  Id. Ferguson agreed to "re-word certain interrogatories to make them more specific."  Id.  Ferguson then served a set of revised discovery requests on March 1, 2010.  Id.  On April 7, 2010, the

Bank submitted its responses to these revised discovery requests.
Id.  Ferguson argues that the Bank's responses were once again
inadequate and that its objections were repetitive and improper.
Id.  Subsequent communications between the parties to resolve these
ongoing disputes have not been productive.  (Pl.'s Mot. Compel 2.)

## II.  Standard of Review

Parties may obtain discovery regarding any non-privileged
matter that is relevant to any party's claim or defense involved in
the pending litigation.  Fed. R. Civ. P. 26(b)(1).  The information
sought need not be admissible at trial as long as the discovery
appears reasonably calculated to lead to the discovery of
admissible evidence.  Id.  "Relevance" under Federal Rule of Civil
Procedure 26(b)(1) has been construed broadly to include "any
matter that bears on, or that reasonably could lead to other matter
that could bear on, any issue that is or may be in the case."
Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  A
party may object to a relevant discovery request, however, if it is
"overly broad" or "unduly burdensome."  See 7 JAMES WM. MOORE ET AL.,
MOORE'S FEDERAL PRACTICE ¶¶ 33.173[3]-[4] (3d ed. 2004).  To assert a
proper objection on this basis, however, one must do more than
"simply intone [the] familiar litany that the interrogatories are
burdensome, oppressive or overly broad."  Compagnie Francaise
D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,
105 F.R.D. 16, 42 (S.D.N.Y. 1984).  Instead, the objecting party

bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id.; see also Hickman v. Taylor, 329 U.S. 495, 507 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

## II. Interrogatories and Production Requests in Dispute

### A. Interrogatory No. 3

The Court will address each subsection of Interrogatory No. 3 in turn.  In Ferguson's first set of discovery requests, Interrogatories No. 3(a)-(c) requested that the Bank state, "[w]ith reference to that certain 'conversation' with Steven Ferguson held on March 27, 2008, and attended by Marion Columbo and Timothy Taylor, along with Steven Ferguson":

    (a) Whether the meeting held with Steven Ferguson was
        or was not a part of the written "applicable rules"
        pertaining to overdrafts by employees; and, if so,
        please incorporate into your response the content
        of the said written rule;

    (b) Whether the meeting held with Steven Ferguson was
        part of the verbal "applicable rules" pertaining to
        overdrafts by employees; and, if so, please include
        a written narrative of the content of the said
        verbal rule;

    (c) Was the taking of written notes by a supervisor, as
        done by Marion Columbo for the said March 27, 2008
        meeting with Steven Ferguson, a part of any such
        written or verbal rule to the handling of

> overdrafts by employees; and, if so please provide
> the content of the written/verbal rule confirming
> that the taking of written notes is a part of such
> rule?

(See dkt. #48, Ex. 1, pg. 6.)   The Bank initially and generally objected on the grounds that these subsections are not limited to the time period of the incident described in the complaint, to the subject matter of the incident described in the complaint, to the supervisors involved in the incident described in the complaint, and to the Norwalk, Connecticut, bank branch described in the complaint.  Id. at 7.  Consequently, the Bank argued that these subsections are overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Id.  The Bank further argued that these subsections seek information that is subject to confidentiality, the attorney-client privilege, and the work-product doctrine.  Id.  Finally, the Bank argued that these subsections seek the mental impressions, conclusions, opinions, and legal theories of the Bank's attorney or other representatives.  Id.  Notwithstanding these objections, the Bank responded by stating that "the meeting held with Steven Ferguson on March 27, 2008 was a part of TD Bank's investigation of Mr. Ferguson's conduct relating to his authorizing, or asking subordinates to authorize overdrafts on his own bank accounts." Id. at 8.

Ferguson revised Interrogatories No. 3(a)-(c) to read as follows:

4

(a) Whether the meeting of March 27, 2008, held with Steven Ferguson was or was not in furtherance of the procedures set out in or contemplated by the terms of the written "applicable rules" pertaining to overdrafts by employees; and, if so, please incorporate into your response the content of the said written rule;

(b) Whether the said meeting of March 27, 2008 held with Steven Ferguson was a part of the verbal "applicable rules" pertaining to overdrafts by employees; and, if so, please include a written narrative of the content of the said verbal rule;

(c) Was the taking of written notes by a supervisor, as done by Marion Columbo for the said March 27, 2008 meeting with Steven Ferguson, a part of any such written or verbal rule to the handling of overdrafts by said employees; and, if so please provide the content of the written/verbal rule confirming that the taking of written notes is a part of such rule?

(See dkt. #48, Ex. 2, pg. 4.)  The Bank objected to these revised requests on the grounds that they are "unduly burdensome" since they are "exact duplicates" of Interrogatories Nos. 3(a), 16, and 3(b), which the Bank previously answered in response to Ferguson's first set of requests.  Id. at 6.  The Bank further objected that the three subsections are beyond the scope of discovery permitted by Federal Rule of Civil Procedure 26.  Id.

Ferguson now argues that these three subsections are, in fact, limited in time and subject matter because they refer to the specific date of the meeting, the names of the supervisors who attended the meeting, and the type of rule at issue in this case. (Pl.'s Mem. Supp. 6.)  In addition, Ferguson argues that these subsections are neither overly broad nor unduly burdensome because

"this interrogatory, including each and every subsection, is specific.  It contains all dates in question, it contains a description of the information and/or documents requested and points the defendant in the exact direction of the information plaintiff is seeking." Id. at 7.  Ferguson further argues that the Bank's confidentiality objection is misplaced in light of the confidentiality order that the parties jointly entered with the Court on January 8, 2010.  [See id.; dkts. ##31, 33.]  Finally, Ferguson argues that the Bank's assertions of the attorney-client privilege and the work-product doctrine are unwarranted because he is not seeking any information subject to that privilege and doctrine.  (Pl.'s Mem. Supp. 7-8.)

The Court concludes that the Bank's objections to these subsections are unwarranted.  Interrogatories No. 3(a) and (b) are not "exact duplicates" of their previous iterations.  Rather, Ferguson has narrowed the scope of these requests so that they include the specific date of the meeting at issue, as well as the names of the individuals who attended that meeting.  While Interrogatory No. 3(c) is identical to its counterpart in Ferguson's first set of discovery requests, it is not objectionable in either form.  Indeed, none of these subsections seek information that is subject to the attorney-client privilege or the work-product doctrine.  The Bank, moreover, has improperly objected on confidentiality grounds because it bypassed the terms of the

Consent Confidentiality Order that it jointly entered with Ferguson; to wit, "A party may designate documents as confidential and restricted in disclosure under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document . . . .  Documents shall be designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER prior to or at the time of the production or disclosure of the documents."  [See dkt. #31.]

In short, these three subsections are neither unduly burdensome nor overly broad.  They are relevant, or at least "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Accordingly, they are permissible under Federal Rule of Civil Procedure 26(b).  The Court also notes that the Bank's response to these three subsections -- which simply indicates that the March 27, 2008 meeting was "a part of TD Bank's investigation of Mr. Ferguson's conduct relating to his authorizing . . . overdrafts on his own bank accounts" -- does not answer the question of whether the meeting and note-taking at the meeting were part of the *written or verbal* "*applicable rules*" pertaining to overdrafts by employees (emphasis added).  As such, the Bank is **ORDERED** to respond to Interrogatories No. 3(a)-(c).

Regarding revised Interrogatory No. 3(d), the Bank's objections are unwarranted because the Court finds that the request is both relevant and reasonably calculated to lead to the discovery of admissible evidence.  The Court further finds that the Bank's

7

confidentiality objection is improper here because the parties have
already entered a joint confidentiality agreement that sufficiently
addresses the Bank's concerns.  Finally, the Court finds that this
subsection is neither overly broad nor unduly burdensome.  Indeed,
the Bank supplied Ferguson with a chart that Ferguson himself
admitted is responsive to the sub-interrogatory.  [See dkt. #48,
Ex. 2, pg. 7-8; Pl.'s Mem. Supp. 4-5.]  The chart is slightly more
than one page long and does not appear to contain information that
is "overly broad and unduly burdensome" for a bank that "has over
25,000 employees and operates stores in states from Maine to
Florida."  (Def.'s Mem. Opp'n 1.)  However, since the Bank has
provided a responsive chart,[1] it shall not be compelled to provide

---

[1] The Court notes its disagreement with the Bank's assertion
that "[t]he chart provided also responded to Interrogatories 3
(e), (g) and (h)."  (Def.'s Mem. Opp'n 6.)  The chart does not
provide the following information for each such subsection:

Interrogatory No. 3(e) -- the "first names and last
initial of the supervisors who attended the meetings
held with said employees."

Interrogatory No. 3(g) -- the "number of such employees
whose jobs were terminated, the number who were
suspended, the number who received written warnings,
the number receiving verbal warnings, the number
receiving other types of discipline and, as to such
persons, state the type of discipline they received."

Interrogatory No. 3(h) -- the "job titles of all
persons who comprise the numbers of employees
responsive to interrogatory 3g)[sic], above."

Clearly, the chart does not contain all of the information that
Ferguson requested in Interrogatories No. 3(e),(g), and (h).  The
Court further notes that the Bank did not comply with Ferguson's

8

anything further in response to this subsection.

Regarding revised Interrogatories No. 3(e)-(h), the Bank's objections are once again unwarranted. Interrogatory No. 3(e) requests the first names and last initial of the individuals that the Bank already named in response to Interrogatory No. 3(d). The remainder of Interrogatory No. 3(e) requests the first names and last initial of the supervisors who attended the meetings held with those employees. This request is relevant, or at the very least reasonably calculated to lead to the discovery of admissible evidence. It is not overly broad or unduly burdensome, and it is not subject to the attorney-client privilege or the work-product doctrine. It is also sufficiently limited in time and scope so as to be permissible under Federal Rule of Civil Procedure 26(b). Accordingly, the Bank is **ORDERED** to fully and completely respond to Interrogatory No. 3(e).

The Bank's response to Interrogatory No. 3(f) -- "during the meeting on March 27, 2008 Mr. Ferguson was asked questions regarding the transactions which he authorized on his own account" -- does not actually respond to the text of the subsection. Ferguson is well aware that he was asked questions during the March 27, 2008 meeting regarding the transactions that he authorized on his account. What Ferguson inquired in this subsection, however,

---

request to name other Bank employees using "first names and last initial." Instead, the Bank identified its other employees by last name and first initial.

was whether the questions that the Bank's employees asked during the meeting "were based on or derived from the above quoted paragraph of the transactions part of the Code of Conduct Policy." This is a permissible discovery request, and the Bank is **ORDERED** to respond to it.

Interrogatories No. 3(g) and (h) are similarly permissible. Given his allegation of disparate treatment, Ferguson is understandably attempting to determine whether and how other bank employees have been disciplined for the same, or similar, infraction.  If Ferguson was questioned pursuant to a certain paragraph of the Bank's Code of Conduct Policy, and the Bank has previously disciplined other employees pursuant to the same paragraph, such information would certainly be relevant or at least reasonably calculated to lead to the discovery of admissible evidence.  In addition, Ferguson is entitled to know how many employees the Bank disciplined, as well as the type of discipline that the Bank imposed.  For purposes of proving disparate treatment, this information is plainly relevant.  Finally, in light of the Bank's apparent ability to produce a chart in response to Interrogatory No. 3(d), this request is neither unduly burdensome nor overly broad.  Accordingly, the Bank is **ORDERED** to respond to Interrogatories No. 3(g) and (h).

**B.    Production Request No. 3**

Ferguson has requested summaries of all meetings that the Bank

10

held regarding Bank employees who were facing discipline for overdrafts on their accounts. Specifically, Ferguson seeks summaries of all meetings held between January 1, 2006 and the present that involved overdrafts by Bank employees and are similar (i.e., the "functional equivalent") to the meeting involving Ferguson on March 27, 2008. The Bank has described this request as "extremely broad, confusing and unintelligible." The Court does not consider this request extremely broad, confusing, and unintelligible. In addition, the Court does not find any of the Bank's other objections, which are tirelessly repeated verbatim throughout the Bank's responses, to be applicable here.

Finally, the Court rejects the Bank's contention that Ferguson improperly failed to narrow or limit his requests to other Bank employees who have been "subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Def.'s Mem. Opp'n 7) (quoting Rodriquez-Cuervos v. Walmart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999)). As Ferguson points out (Pl.'s Mem. Supp. 12-13), the Bank has confused the evidentiary standard applicable at trial with the standard that applies to discovery. As Federal Rule of Civil Procedure 26(b) dictates, "Parties may obtain discovery regarding **any nonprivileged matter** that is **relevant to any party's claim or defense** . . . . Relevant information **need not be**

**admissible at the trial** if the discovery appears **reasonably
calculated to lead to the discovery of admissible evidence**." Fed.
R. Civ. P. 26(b) (emphasis added).

In citing the Rodriguez-Cuervos case, the Bank is correct in
pointing out that when offering comparative evidence, the relevant
inquiry is whether "the individuals with whom he seeks to be
compared 'have been subject to the same standards and have engaged
in the same conduct without such differentiating or mitigating
circumstances . . . .'" (Def.'s Mem. Opp'n 7)(quoting Rodriguez-
Cuervos v. Walmart Stores, Inc., 181 F.3d at 21). In terms of
discovery requests, however, the standard is significantly more
liberal and lenient.  It is unnecessary and improper to limit
Ferguson's requests to "information about employees who held a
position similar to his, reported to the same supervisor or engaged
in the same kind of conduct." (Def.'s Mem. Opp'n 7.)  As long as
Ferguson's request appears reasonably calculated to lead to the
discovery of information that he could use to advance his disparate
treatment claim at trial -- and it does appear to be so calculated
-- it is permissible under Rule 26.

Nevertheless, the Bank indicated that "[n]o recordkeeping
system exists whereby the Bank would file records with reference to
a meeting which was the 'functional equivalent of the meeting
summary dated March 27, 2008.'" Id.  If the Bank truly keeps no
records regarding meetings similar to the one Ferguson attended on

March 27, 2008, then the Bank should so indicate in its response to Ferguson's request.  If the Bank possesses such records, however, it is **ORDERED** to produce them.

### C.   Production Request No. 4

This production request does not appear to seek information that is protected by the attorney-client privilege or the work-product doctrine.  It does not appear to seek the mental impressions, conclusions, opinions, and legal theories of an attorney or other representative of the Bank.  Indeed, "work product immunity protects memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case and writings which reflect an attorney's mental impressions, conclusions, opinions, or legal theories." See Parker v. Stone, No. 3:07-CV-271 (VLB), 2009 U.S. Dist. LEXIS 33554, at *14 (D. Conn. Apr. 21, 2009)(quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947))(internal quotation marks omitted).  The question therefore becomes whether Ferguson's 2007 Annual Officer Performance Appraisal, written communications between various Bank employees pertaining to Ferguson's overdraft, the March 27, 2008 meeting, and Ferguson's termination on March 28, 2008, fall under this doctrine.  The Court concludes that these things do not fall under the doctrine.  Accordingly, the Bank is **ORDERED** to produce responsive documents, to the extent they exist.

### D.   Production Request No. 5

The Bank objected to this request on the grounds that it is "unduly vague in that it fails to identify with particularity the information being sought." (See dkt. #48, Ex. 2, pg. 10.) The Court does not find this request to be "unduly vague" for lack of particularity. It is clear that Ferguson seeks documentation relating to the discipline that the Bank imposed on employees who, like Ferguson, met with supervisors for allegedly violating a certain paragraph of the Code of Conduct. This appears to include documents describing the penalty imposed -- ranging from termination to suspension to verbal or written warnings -- as well as documentation communicating such discipline to the employees. The Court does not consider this request "unduly vague."

The Bank indicated, however, that "it does not keep information by reference to the topics identified in the request, and as such, cannot reasonably identify documents responsive to the Request for Production." (See dkt. #48, Ex. 2, pg. 10.) But, as Ferguson points out (Pl.'s Mem. Supp.  12-13), it is odd that a large national bank, with "over 25,000 employees" and "stores ranging from Maine to Florida," does not keep records of discipline, especially when such discipline includes termination. (Def.'s Mem. Opp'n 1.) If the Bank truly does not possess any documents describing or communicating the discipline that it imposed on employees who violated the same portion of the Bank's Code of Conduct as Ferguson, then the Bank should so indicate in

14

its response to Ferguson's request.  However, if the Bank does possess such documentation, it is similarly **ORDERED** to disclose it to Ferguson.

### E.   Production Request No. 13

Once again, the Bank objected to this request on the grounds that it is "unduly vague in that it fails to identify with particularity the information being sought." (See dkt. #48, Ex. 2, pg. 11.)  Once again, the Court does not consider this request "unduly vague."  Ferguson restricted his request to the employees that the Bank has disciplined for violating the same portion of the Code of Conduct as Ferguson, as well as to the employees that met with the same type of supervisors as Ferguson on March 27, 2008. This is neither overly broad nor unduly burdensome.  Nevertheless, the Bank has once again indicated that "it does not keep information by reference to the topics identified in the request, and as such, cannot reasonably identify documents responsive to the Request for Production." (See dkt. #48, Ex. 2, pg. 10-11.)  The Bank is **ORDERED** to provide the performance appraisals of each employee listed under Interrogatory No. 3(h), to the extent they exist.

## III. Conclusion

For the foregoing reasons, the plaintiff's motion to compel (dkt. #40) is **GRANTED**.  Furthermore, the defendant is **ORDERED**, within fifteen (15) calendar days of this date, to show cause in

15

writing why it should not be ordered to pay the Clerk of the Court for the District of Connecticut the sum of $5,000 to partially reimburse the public for the time and public resources it forced the Court to expend as a result of the Bank's unjustifiable recalcitrance.  At the conclusion of all proceedings herein, on application, the Court will consider the amount of attorney's fees, if any, that should be awarded to the plaintiff as a result of his meritorious opposition to the defendant's motion.  Fed. R. Civ. P. 37.

This is not a recommended ruling.  This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review.  See 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 6 (a), 72 (a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 25th day of June, 2010.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**

16